The STATE of Delaware, upon the relation of the COMMISSIONER OF the DEPARTMENT OF CORRECTION, Plaintiff Below, Appellant/Cross–Appellee,

v.

John S. RITTENHOUSE, and Thomas Brittingham, t/a Ludlow Industrial Park Partnership, a Delaware General Partnership, Confidential Bank; 0.851 Acres of Land, more or less, situate in the City of Wilmington, New Castle County, State of Delaware, and Unknown Owners, Defendants Below, Appellees/Cross–Appellants.

Supreme Court of Delaware.

Submitted: Oct. 19, 1993
Decided: Dec. 20, 1993.

Aubrey B. Lank, Richard L. Abbott, (argued), of Theisen, Lank, Mulford & Goldberg, Wilmington, for appellant.

Jeffrey C. Wisler (argued), Douglas M. Hershman, Barbara Snapp Danberg of Williams, Gordon & Martin, Wilmington, for appellees.

Before VEASEY, C.J., WALSH and HOLLAND, JJ.

HOLLAND, Justice:

This condemnation action was initiated by the State of Delaware, upon relation of the Commissioner of the Department of Correction ("State"). The named defendants included John S. Rittenhouse and Thomas Brittingham, trading as Ludlow Industrial Park Partnership ("Ludlow Partnership"). Ludlow Partnership requested that a trial be held to determine the amount of just compensation for the taking of its property. 10 Del.C. § 6108.

A trial was held in the Superior Court before a judge and a panel of three condemnation commissioners ("Commissioners"). See id. The Commissioners returned a unanimous verdict in which it found that the condemnation was a partial taking. The Commissioners awarded the Ludlow Partnership compensation in the amount of $143,250.

The State has raised four issues in this direct appeal: (1) the trial judge committed reversible error by admitting into evidence the amount of money which the State had deposited into court with its notice of intention to take possession of the property; (2) the trial judge erred in submitting the "unity of use" issue to the Commissioners; (3) the trial judge erred in permitting the Ludlow Partnership's appraiser to testify as an expert witness; and (4) the Commissioners' ultimate determination of a partial taking was erroneous.

Ludlow Partnership has filed a cross-appeal. In a post-verdict ruling, the trial judge concluded that admitting evidence of the State's deposit into the Superior Court was erroneous but harmless. Ludlow Partnership contends that evidence of the State's deposit was properly admissible for the Commissioners to consider.

We have carefully reviewed the record. We have concluded that the Superior Court's rulings, including its harmless error determination, were correct. Accordingly, the judgment of the Superior Court is affirmed.

*Facts*

Ludlow Partnership is in the business of purchasing, operating and managing industrial rental properties. On June 28, 1988, it purchased certain property in the City of Wilmington known as the Brandywine Industrial Complex ("Complex") from the Wilmington Economic Development Corporation ("WEDCO"). Approximately 14.56 acres of the Complex, located on the southwest side of East 12th Street, is improved with 350,000 square feet of industrial and office buildings ("Developed Parcel"). Approximately 0.86 acres of the Complex was a 90' × 415' paved parcel ("Taken Parcel") located directly across 12th Street from the Developed Parcel.

The record reflects that Developed Parcel and the Taken Parcel had been commonly owned since prior to 1900. The Taken Parcel was originally part of a 6.86 acre paved, fenced-in parcel ("Parking Parcel") with direct access onto 12th Street. There are no public parking facilities adjacent to the Complex, and no on-street parking is permitted on 12th Street. Historically, the Parking Parcel had been used as support parking for the Developed Parcel.

When Ludlow Partnership sought to purchase the complex, WEDCO wanted to retain the Parking Parcel for future development. Ludlow Partnership, however, refused to purchase the Developed Parcel without the Parking Parcel. WEDCO agreed, therefore, to subdivide the Parking Parcel and to convey the Taken Parcel to Ludlow Partnership along with the Developed Parcel.

On November 30, 1990, the State filed its Complaint to condemn the entire Taken Parcel for use as part of the Gander Hill Prison expansion. As part of the condemnation process, the State obtained an appraisal of the Taken Parcel, which estimated its market value to be $54,000 ("Initial Valuation"). The State represented to the Superior Court that

$54,000 was its estimate of just compensation for the Taken Parcel and deposited that sum with the Superior Court ("Deposit") when it filed "a notice of intention to take possession of the property."[1] 10 *Del.C.* § 6110(a).

Ludlow Partnership's Answer to the Complaint alleged that the State had failed to attempt acquisition negotiations as required by 29 *Del.C.* § 9505 and requested that a hearing be held to determine just compensation for the "partial taking" of its property. The State and Ludlow Partnership subsequently filed cross-motions *in limine* requesting that the Superior Court declare the condemnation a "total taking" and a "partial taking," respectively. The Superior Court denied both motions *in limine* and ordered that the question of "unity of use" between the Developed Parcel and the Taken Parcel be determined by the Commissioners. *See State ex rel. Comm'r of Dep't of Correction v. Rittenhouse,* Del.Super., 621 A.2d 357 (1992).

At trial, Ludlow Partnership presented testimony about its present and future need for the Taken Parcel. The partnership presented testimony that it would not have bought the Developed Parcel without the Taken Parcel. According to Ludlow Partnership, from the date of purchase, it used the Taken Parcel for support parking for the Developed Parcel and for marketing of the Developed Parcel.

The State objected to the admission of testimony by one of the Ludlow partners concerning the State's Deposit. The trial judge overruled the objection, but permitted no further testimony on that issue. The trial judge then immediately instructed the Commissioners that the State's deposit of $54,000 into Superior Court did not affect either party's "right to prove just compensation in a greater or less amount." *See* 10 *Del.C.* § 6110(b).

Ludlow Partnership also presented as its real estate expert, William T. Bott ("Bott"). The State objected to Bott's testimony on the grounds that he was not licensed pursuant to 24 *Del.C.* § 2930, *et seq.* The Superior Court overruled the objection, on the basis that a

regulation precluding testimony in the absence of such a license was not yet effective. Bott testified that just compensation for the Taken Parcel, under a "partial taking" theory, was $180,000.

The State's first witness, George Martino ("Martino"), testified that during his nine years of employment at the Gander Hill Prison, he had never seen cars parked on the Taken Parcel. The State's second witness was Robert McKennon, ("McKennon"), the State's expert real estate appraiser. He testified that just compensation to the Ludlow Partnership for the condemnation of the Taken Parcel was $41,500, regardless of whether the condemnation was considered to be a partial or total taking.

The Commissioners returned a unanimous verdict that just compensation of $143,250 was due to the Ludlow Partnership for what was determined to be a "partial taking." The State filed a motion to set aside the award. Ludlow Partnership filed a motion to confirm the award.

The Superior Court denied the State's motion to set aside the award. Although the Superior Court found error in the admission of the Deposit as evidence of just compensation, it concluded that the error was harmless. It therefore entered an order confirming the award.

### State's Deposit
### Inadmissible Evidence

■ The State's first argument on appeal is that the Superior Court committed reversible error by permitting the amount of its Deposit to be considered as evidence of just compensation. In a condemnation proceeding, the Delaware law requires the governmental authority to "deposit in [the Superior] Court ... the sum of money estimated by plaintiff to be just compensation for the property or the part thereof taken." 10 *Del.C.* § 6110(a). Whether the amount of such a deposit is admissible at trial, as evidence of

---

1. On August 14, 1991, pursuant to a Stipulation and Order for Withdrawal of Funds, the $54,000 deposited with the Superior Court was distributed to Continental Bank, co-defendant and first mortgage holder on the Taken Parcel.

just compensation, is an issue of first impression in Delaware.

The issue, however, has been considered by federal courts in a closely related context. The language of Section 6110 is substantially similar to language found in the federal Declaration of Taking Act. *See* 40 U.S.C.A. § 258a (Cum.Supp.1993). In a federal condemnation proceeding, the Declaration of Taking Act provides for the United States to deposit into court a "sum of money estimated by said acquiring authority to be just compensation for the land taken." *Id.* The federal courts have concluded that the deposit into court by the government is not admissible as evidence of just compensation in a subsequent condemnation proceeding. *See, e.g., United States v. 341.45 Acres of Land,* 751 F.2d 924, 940–41 (8th Cir.1984); *United States v. 101.80 Acres of Land,* 716 F.2d 714, 728 n. 25 (9th Cir.1983) (citing *Evans v. United States,* 326 F.2d 827, 829–30 (8th Cir.1964)); *United States v. 75.13 Acres of Land,* 693 F.2d 813, 817 (8th Cir.1982) (same); *United States v. Two Tracts of Land,* 412 F.2d 347, 350 (2d Cir.) (same), *cert. denied,* 396 U.S. 906, 90 S.Ct. 222, 24 L.Ed.2d 183 (1969); *In re United States,* 257 F.2d 844, 848 (5th Cir.1958) (citing *United States v. Miller,* 317 U.S. 369, 381, 63 S.Ct. 276, 283, 87 L.Ed. 336 (1943)); *United States v. 9.85 Acres of Land,* 183 F.Supp. 402, 404 (D.Va.1959), *aff'd sub nom. Tidewater Development and Sales Corp. v. United States,* 279 F.2d 890 (4th Cir.1960). *See also* 3 Nichols, *The Law of Eminent Domain* § 8.16 (Sackman, rev. 3d ed. 1992).

Similarly, we hold that the sum deposited into the Superior Court by a governmental authority pursuant to Section 6110 is not admissible in a subsequent condemnation proceeding as evidence of just compensation. 10 *Del.C.* § 6110(b). In the case *sub judice,* the Superior Court recognized that the admission of the Deposit as evidence of just compensation was erroneous, but concluded that its error was harmless. We agree.

The record reflects that the testimonial reference to the amount of the State's Deposit was brief. The Superior Court immediately instructed the Commissioners that the payment of the Deposit did not affect either party's "right to prove just compensation in a greater or less amount." *See* 10 *Del.C.* § 6110(b). The record supports the Superior Court's ultimate determination that, notwithstanding its error in admitting the amount of the State's Deposit into evidence, its instruction permitted the Commissioners to discharge their duties without prejudice to the State. *See* 10 *Del.C.* § 6108(g).

### *Unity of Land Noncontiguous Parcels*

The State argues that no Delaware court has recognized a "partial taking" when one of two noncontiguous parcels of land is condemned. Consequently, noting that the Developed Parcel and the Taken Parcel are separated by Twelfth Street, the State contends its condemnation can only constitute a "total taking" of the Taken Parcel. Alternatively, the State submits that even if the "unity of lands" doctrine is applicable, the condemnation in this case was, in fact, a total taking pursuant to that doctrine.

Ludlow Partnership argues that under Delaware law, two or more separate parcels may be recognized as a single unified tract for condemnation purposes and, accordingly, may be evaluated pursuant to a "partial taking" analysis. Specifically, Ludlow Partnership contends that although the Developed Parcel and Taken Parcel are not contiguous, an application of the unity of lands doctrine, as previously recognized by the Superior Court, requires the condemnation in this case to be treated as a "partial taking." *See City of Milford v. .2703 Acres of Land,* Del.Super., 256 A.2d 759 (1969).

It is well-established by Delaware's common law jurisprudence that in the event of a partial taking,[2] "compensation to which an owner is entitled is related to the damage to the property as a whole." *0.089 of an*

---

**2.** Partial takings are also recognized in Delaware by statute. 29 *Del.C.* § 9505(3) provides, in part, that "[w]here appropriate, the just compensation

for the real property acquired and for damages to remaining real property shall be separately stated." *See also* 29 *Del.C.* § 9505(9).

*Acre of Land v. State ex rel. Smith,* Del. Supr., 145 A.2d 76, 79 (1958) (citing *Board of Educ. v. 13 Acres of Land,* Del.Super., 131 A.2d 180 (1957)); *See* 4A Nichols, *The Law of Eminent Domain* § 14.02[2], at 14–33. In Delaware, compensation for a partial taking "is the difference in value of the whole before the taking and the value of the remainder after the taking." *1.67 Acres of Land v. State ex rel. Allen,* Del.Supr., 225 A.2d 763, 765 (1967) (citing *0.089 of an Acre of Land v. State ex rel. Smith,* 145 A.2d 76). *See State ex rel. State Highway Dep't v. Morris,* Del.Super., 93 A.2d 523 (1952). Accordingly, the owner must be compensated not only for the value of the land taken, but for diminution in value of remaining property that may result from the taking, i.e., severance damage. *Board of Educ. v. 13 Acres of Land,* 131 A.2d at 182.

■ The Superior Court examined the "unity of lands" doctrine in *City of Milford v. .2703 Acres of Land.*[3]

There is no single rule or principle established for determining the unity of lands for the purpose of awarding damages or offsetting benefits in eminent domain cases. The factors most generally emphasized are unity of ownership, physical unity and unity of use. Under certain circumstances the presence of all these unities is not essential. The respective importance of these factors depends upon the factual situations in individual cases. *Usually unity of use is given greatest emphasis.*

256 A.2d at 760 (emphasis added) (quoting *Barnes v. North Carolina State Highway Comm'n,* N.C.Supr., 250 N.C. 378, 109 S.E.2d 219, 224–25 (1959)). Accordingly, the unity of land doctrine considers three factors: unity of ownership, unity of use, and physical unity. *Id.*

According to Ludlow Partnership, the State's action constitutes a "partial taking" by virtue of the common ownership and functional use of the two parcels as a whole. In the present case, there is no doubt that unity of ownership existed. The Developed Parcel and the Taken Parcel had been jointly owned since 1900 and were jointly owned on the day the parcel was taken.

■ Although the Developed Parcel and the Taken Parcel are separated by Twelfth Street, the above language from *Barnes* quoted in *City of Milford* reflects that physical unity is not a *sine qua non* to a determination of unity of lands. The New Jersey Supreme Court has articulated a rationale for not making the fact that the condemned parcel is physically separated from the remaining parcel dispositive in a unity of land analysis:

The fact that the condemned parcel and the remaining property do not have a common boundary should not prevent the landowner from offering evidence concerning severance damages. If prior to the taking, the two parcels were functionally united, then it is quite possible that the landowner sustained a decrease in the utility, and hence the value, of the remaining parcel when the condemned property was taken. For this reason, functional unity and not spatial unity is the relevant consideration.

*Housing Auth. v. Norfolk Realty,* N.J.Supr., 71 N.J. 314, 364 A.2d 1052, 1056 (1976) (footnote omitted) (citing *Baetjer v. United States,* 143 F.2d 391 (1st Cir.), *cert. denied,* 323 U.S. 772, 65 S.Ct. 131, 89 L.Ed. 618 (1944)).[4]

Consequently, when there is physical separation but unity of use can be demonstrated, a finding that a single tract existed is appropriate. *Id.; Barnes v. North Carolina State*

---

3. In *City of Milford,* the Superior Court addressed the issue of whether to consider the value of an entire tract of land in computing just compensation when complete unity of ownership was lacking with regard to a parcel included within the entire tract taken. 256 A.2d at 759. Two of the owners held the tract of land as tenants by the entirety. A parcel included within the tract and condemned along with a parcel of the tract was held by the same owners together with another owner as tenants in common. *Id.*

4. Unity of use is recognized by the courts of several jurisdictions when utilizing the unity of land doctrine or the guidelines contained therein. *See, e.g., Sandin v. Commonwealth, Dep't of Transp.,* Pa.Commw., 124 Pa.Cmwlth. 221, 555 A.2d 966, 967–68 (1989); *Warwick Musical Theatre, Inc. v. State,* R.I.Supr., 525 A.2d 905, 911 (1987); *Andrews v. City of Greenbelt,* Md.App., 293 Md. 69, 441 A.2d 1064, 1070 (1982).

*Highway Comm'n,* 109 S.E.2d at 224–25. The burden of proving unity of use rests upon the land owner. To establish unity of use, the landowner must demonstrate "such a connection, or relation of adaption, convenience, and actual and permanent use between them, as to make the parcel taken, reasonably and substantially necessary to the enjoyment of the parcel left." *Barnes v. North Carolina State Highway Comm'n,* 109 S.E.2d at 225 (quoting *Peck v. Superior Short Line Ry.,* Minn.Supr., 36 Minn. 343, 31 N.W. 217, 218 (1887)).

The State argues that in order to carry its burden of proving "unity of use," the land owner must demonstrate "actual and present use." The decisions from other jurisdictions are divided on this issue. *Compare, e.g., Department of Pub. Works and Bldgs. v. Hanna,* Ill.App., 4 Ill.App.3d 884, 282 N.E.2d 269 (1971) *and Barnes v. North Carolina State Highway Comm'n,* 109 S.E.2d at 225–26 *with State v. Silver,* N.J.Supr., 92 N.J. 507, 457 A.2d 463, 469 (1983) (prospective use as well as present use may be relevant). In *State v. Silver,* the New Jersey Supreme Court held:

> Ordinarily the actual functional or economic combination of parcels at the time of condemnation is the most convincing evidence that the taking of less than the combined whole of the properties is a partial taking. However, the intended use of properties in combination—prospective functional unity—is also relevant in determining whether the condemnation of one of the parcels can be fairly regarded as a "partial taking," permitting an award of severance damages with respect to any remaining related properties.

457 A.2d at 469 (citation omitted).

In this appeal, the State argues that a condition precedent to finding unity of use is that the use must be actual and present. The Superior Court held that actual and present use was *not* a condition precedent to such a finding. The Superior Court's decision is supported by *Silver,* which held that the "intended use of properties ... [known as the] prospective functional unity" may be relevant in deciding unity of use. *See id.* We agree.

In the case *sub judice,* after examining the relevant authorities, the Superior Court made three holdings: first, when the condemned property is physically separate from another parcel allegedly damaged as a result of such taking, severance damages for a "partial taking" are permitted, provided that there is "functional unity" between the parcels; second, such unity of use exists when the properties are so inseparably connected in their uses that the taking of one will permanently damage the other; and third, the landowner bears the burden of showing functional unity. We affirm all three of those holdings. *Accord State v. Silver,* N.J.Supr., 457 A.2d 463 (1983).

### Unity of Land
### Required Factual Determination

The State next contends that the Superior Court erred in submitting the unity of land issue to the Commissioners. It is well-established that in a condemnation proceeding, the Commissioners are the sole and exclusive arbiters of the facts, of the credibility of the witnesses, and of the weight and value of their testimony. *Wilmington Hous. Auth. v. Harris,* Del.Supr., 93 A.2d 518, 522 (1952). *See Board of Educ. v. 13 Acres of Land,* 131 A.2d at 184. It is also the duty of the Commissioners to determine, based on the facts, the appropriate amount of just compensation. 10 *Del.C.* § 6108(g). This Court has held that factual disputes are to be resolved by the Commissioners in a condemnation proceeding. *See Board of Educ. v. 13 Acres of Land,* 131 A.2d at 184. *See also* 4A Nichols, *The Law of Eminent Domain* § 14B.04[1].

The United States Supreme Court has held that when doubt exists regarding the unity of lands "it would be proper to leave that question to the jury." *Sharp v. United States,* 191 U.S. 341, 354, 24 S.Ct. 114, 117, 48 L.Ed. 211 (1903). *See Barnes v. North Carolina State Highway Comm'n,* 109 S.E.2d at 224. Similarly, the Vermont Supreme Court has held:

> The fact that [the] land which was taken happens to be directly across the road from where the plaintiffs have their place

of business is of itself of no importance. It is only when the land taken is used in connection with the business carried on across the road that the taking acquires significance. If the condemned land had been used, for example, for overflow parking, then business loss would be a proper matter for the jury to consider in arriving at the amount of compensation which the plaintiffs would be entitled to receive. *Spear v. State Highway Bd.*, Vt.Supr., 122 Vt. 406, 175 A.2d 511, 513 (1961). *Compare State v. Davis Concrete of Del., Inc.*, Del. Supr., 355 A.2d 883, 886–87 (1976).

In the present case, the question of unity of land was factually disputed. Therefore, it was the role of the Commissioners, as the sole arbiter of the facts, to weigh the evidence and decide if a partial taking existed. Based upon the conflict in the evidence, the Superior Court properly submitted the disputed factual issue of unity of land for resolution by the Commissioners. *See Sharp v. United States*, 191 U.S. 341, 354, 24 S.Ct. 114, 117, 48 L.Ed. 211 (1903).

### *Partial Taking Supported by the Record*

The State contends that the Commissioners erroneously determined that a partial taking had occurred. The Commissioners' findings in a condemnation proceeding are similar to that of a jury and "will not be disturbed by this Court if there is competent evidence in the record to support them." *Del–Tan Corp. v. Wilmington Hous. Auth.*, Del.Supr., 297 A.2d 34, 35 (1972) (citing 10 *Del.C.* § 6108). *See also Wilmington Hous. Auth. v. Harris*, 93 A.2d at 522. The record reflects that the Commissioners' determination of a partial taking is supported by competent evidence.

### *Expert Testimony Properly Admitted*

Finally, the State argues that the Superior Court improperly qualified Ludlow Partnership's appraiser, Bott, as an expert witness. Bott admitted that he was not "registered with and duly licensed or certified by the Council on Real Estate Appraisers." 24 *Del.C.* § 2930(a). The Superior Court took judicial notice that the regulation relied upon by the State as a basis for its objection provided that "[a]fter December 31, 1992 no person ... shall act as a real estate appraiser ... without being registered with and duly licensed or certified by the Council on Real Estate Appraisers." In view of the effective date of the regulation, however, the Superior Court overruled the State's objection because Bott was not in violation of its provisions at the time of the trial of this matter. We affirm that ruling. Therefore, Bott's expert testimony upon behalf of Ludlow Partnership was properly admitted into evidence.

### *Conclusion*

The judgment of the Superior Court is AFFIRMED.